```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------X
YANG LI and CHUN ZHOU LI,

                    Plaintiffs,                    REPORT AND
         -against-                                 RECOMMENDATION

YA YI CHENG, PING YANG, and                        10 CV 4664 (JBW)
LUCKY GRAND HUNAN CHINESE
RESTAURANT, INC., et al.,

                    Defendants.
-----------------------------------------------X
```

On October 12, 2010, plaintiffs Yang Li and Chun Zhou Li commenced this action against defendants Ya Yi Cheng, Ping Yang, and Lucky Grand Hunan Chinese Restaurant, Inc. ("Lucky" or "the Restaurant"), alleging that defendants failed to pay minimum wages, overtime wages and spread of hours pay in violation of the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. ("FLSA"), and New York Labor Law §§ 190, 191, and 652, and 12 N.Y.C.R.R. §§ 137.1.3, 3.11. By notice of motion dated March 25, 2011, defendants moved for summary judgment seeking dismissal of all of plaintiffs' claims based on the court's lack of federal subject matter jurisdiction. At the hearing before the Honorable Jack B. Weinstein, held on November 4, 2011, the court referred the matter to the undersigned magistrate judge to conduct a hearing on the question of subject matter jurisdiction.

For the reasons stated below, it is respectfully recommended that the court grant defendants' motion for summary judgment and decline to exercise supplemental jurisdiction over plaintiffs' remaining claims.

1

## THE PARTIES' CLAIMS

In the Complaint, plaintiffs Yang Li and Chun Zhou Li allege that from January 23, 2010 to June 16, 2010, they were employed as servers at Lucky, a Chinese restaurant located at 2347 86th Street, Brooklyn, New York. (Compl.[1] ¶¶ 1, 7, 8, 20). Plaintiffs' Complaint alleges that the defendants Ya Yi Cheng and Ping Yang owned and operated Lucky during the relevant time period, and had the power to hire and fire plaintiffs. (Id. ¶¶ 13-18, 20). Plaintiffs allege that they regularly worked approximately sixty or more hours a week while employed by the defendants and that they were only allowed one day off a week. (Id. ¶¶ 25-28).[2]

In moving for summary judgment, defendants argue that plaintiffs' employment at Lucky is not covered by the FLSA in that plaintiffs have failed to demonstrate the necessary elements required for jurisdiction under Section 207 of the FLSA. (Defs.' Mem.[3] at 6). Specifically, the defendants argue that plaintiffs cannot satisfy the jurisdictional prerequisite that requires a showing that Lucky constituted an "enterprise" generating a gross income of $500,000 or more during a one year period. (Id.) Defendants also contend that plaintiffs cannot sustain their burden of showing that they were employees engaged in commerce or the production of goods for commerce as required by the FLSA. (Id. at 7).

---

[1] Citations to "Compl." refer to plaintiffs' Complaint, filed June 16, 2011.

[2] In their Opposition to Motion for Summary Judgment, dated April 14, 2011, plaintiffs assert that Yang Li received a salary of $2,600 per month but was not paid for the first and last months of her employment. (Pls.' Opp. ¶ 3). Plaintiff Zhou Li claims that he never received his promised salary of $3,400 per month. (Id. ¶ 4).

[3] Citations to "Defs.' Mem." refer to defendants' Memorandum of Law in Support of their Motion for Summary Judgment, filed March 25, 2011.

2

## FACTUAL FINDINGS

At the hearing held before this Court on December 9, 2011, defendants presented the testimony of Ya Yi Cheng, who testified that he entered into a partnership with the plaintiffs prior to the opening of the restaurant, in which he invested $162,000 and plaintiffs, who had agreed to invest $50,000, invested only $15,000. (Tr.[4] at 41-42). Although they were partners, Mr. Cheng testified that they received a monthly draw with the exception of Yang Li who was paid on an hourly basis to work as a server in the restaurant. (Id. at 42-43). According to Mr. Cheng, he was responsible for keeping the books and records of the restaurant and he recorded not only sales receipts but amounts of his own money invested in the restaurant, along with expenses. (Id. at 40-41, 46). The restaurant, which opened in February 2010 and closed on October 10, 2010, consistently lost money. (Id. at 42, 44). As reported in the restaurant's income tax returns for the period that it was open, the restaurant reported total sales in the amount of $135,902 over the entire eight-month period. (Id. at 51; Defs.' Ex.[5] C). Mr. Cheng testified that the amount reported was accurate. (Tr. at 51-52).

Mr. Cheng also testified that every month, he prepared a summary of the expenses and sales of the restaurant. (Id. at 40, 45-46; Defs.' Ex. A; Pls.' Ex. 1[6] at p. 6-9). The charts

---

[4] Citations to "Tr." refer to the transcript of proceedings held before this Court on December 9, 2011.

[5] Citations to "Defs.' Ex." refer to exhibits offered by defendants during the proceeding on December 9, 2011.

[6] Citations to "Pls.' Ex." refer to exhibits offered by plaintiffs during the proceeding on December 9, 2011. Although plaintiff Yang Li testified that she prepared the first five pages of Exhibit 1, both Li and Cheng identified the last four pages of the exhibit, which are written in Chinese, as documents prepared by Mr. Cheng. (Tr. at 40-41).

3

prepared by Mr. Cheng demonstrate that the restaurant experienced sales in the following months as follows:

| Month | Total Sales |
|---|---|
| February 2010 | $12,434.58 |
| March 2010 | $15,034.62 |
| April 2010 | $17,067.14 |
| May 2010 | $18,085.26 |
| June 2010 | $17,507.53 |
| July 2010 | $15,706.52 |
| August 2010 | $14,462.65 |
| September 2010 | $14,263.30 |
| October 2010 | $11,340.76 |
| Total | $135,902.36 |

(Defs.' Ex. A; Tr. at 45, 56-57). According to Mr. Cheng, the sales listed on the pages in Plaintiffs' Exhibit 1 that he prepared contain consistent sales figures. (Tr. at 45, 56-57; Pls.' Ex. 1 at 6-9). When questioned on cross-examination regarding the additional amounts not reflected on Defendants' Exhibit A, Mr. Cheng explained that the additional amounts included monies that he had personally invested in the restaurant on a monthly basis to keep it operational. (Tr. at 58-63). He testified that eventually, the restaurant continued to lose money and he was forced to close it. (Id. at 45).

Plaintiff Yang Li testified that she worked as a waitress at Lucky from January to mid June 2009 or 2010.[7] (Id. at 3). Ms. Li testified that she also compiled a list of sales from invoices or cashier receipts that she took from the restaurant when there was a falling out

---

[7]Ms. Li was unsure as to exactly when she worked, indicating that it was either 2009 or 2010. (Tr. at 3).

between the defendants and her and her husband.[8] (Id. at 8-9, 14). She testified that every night after Lucky closed, she was responsible for collecting all of the waitress' receipts, which she took upstairs where there was an office and where she and her husband were living. (Id. at 8, 13).

Based on Ms. Yi's calculations, which cover only the first four and a half months that Lucky was in operation, the restaurant generated sales in the amounts set forth below:

| Month | Total Sales |
|---|---|
| February 2010 | $27,443.66 |
| March 2010 | $37,684.42 |
| April 2010 | $27,404.43 |
| May 2010 | $31,294.43 |
| June 2010[9] | $12,611.94 |
| Total | $136,438.88 |

In addition, Ms. Li testified that these numbers did not include sales through delivery orders which the cashier or the boss, Mr. Cheng, handled. (Tr. at 7, 31-32). Mr. Cheng, however, denied that the Restaurant had a delivery service and claimed that there were no

---

[8] Although these receipts were allegedly taken from the Restaurant without defendants' knowledge and had not been disclosed to defendants' counsel during discovery or at any time prior to the hearing, the Court allowed plaintiff Yi to testify as to the content of these receipts and her analysis of them, but also provided defendants' counsel with an opportunity to review them and submit additional briefing based on their review. (Tr. at 17). By letter dated December 23, 2011, defendants indicated that

> [a]fter reviewing the receipts, [defendants] found that only some of them contained recognizable signatures belonging to defendant Ping Yang. The rest . . . did not have any recognizable signatures belonging to either of the individual defendants . . . Thus, defendants are only willing to acknowledge those restaurant receipts which contain defendant Ping Yang's signature.

(Defs.' 12/23 Ltr. at 1). The Court notes defendants' objection to some of the receipts.

[9] Ms. Li testified that this figure only represents the sales for the first half of June 2010, as she only worked half of that month. (Tr. at 19).

5

additional sales beyond those reflected in his Exhibit. (Tr. at 46).

Having observed the witnesses and their respective demeanor, as they testified, the Court credits Mr. Cheng's testimony in its entirety and concludes that there was no additional revenue to Lucky through delivery service. The Court also credits Mr. Cheng's testimony that the sales generated by the Restaurant during the eight-month period that it was in existence did not exceed $135,902.36.

## THE REQUIREMENTS OF THE FLSA

### A. FLSA Enterprise Engaged in Commerce

Section 207 of the FLSA provides:

> Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed at an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified as a rate not less than one and one-half times the regular rate at which he is employed.

29 U.S.C. § 207(a)(1). Thus, the FLSA covers an "enterprise engaged in commerce or in the production of goods for commerce," which is defined as an enterprise "whose annual gross volume of sales made or business done is not less than $500,000." 29 U.S.C. § 203(s)(1)(A)(ii). Although the FLSA "'has been construed liberally to apply to the furthest reaches consistent with congressional direction,'" Remmers v. Egor, 332 F.2d 103, 104 (2d Cir. 1964) (quoting Mitchell v. Lublin, McGaughy & Assocs., 358 U.S. 207, 211 (1959)), "the FLSA's coverage does not extend to every business that affects commerce." Lamont v. Frank Soup Bowl, Inc., No. 99 CV

6

12482, 2001 WL 521815, *3 (S.D.N.Y. May 16, 2001). Indeed, "Congress, by excluding from the Act's coverage employees whose activities merely 'affect commerce,' indicated its intent not to make the scope of the Act coextensive with its power to regulate commerce.'" Mitchell v. Lublin, McGaughy & Assocs., 358 U.S. at 211.

Defendants contend that Lucky is not subject to the FLSA because it does not satisfy the definition of "enterprise" set forth in the statute. Specifically, defendants argue that based on the revenue generated by Lucky during the eight months that it was in operation, it is clear that Lucky could never meet or exceed the $500,000 requirement in gross volume of sales or business done on an annual basis. (Defs.' Mem. at 6).

In responding to defendants' motion for summary judgment, plaintiffs argue that defendants have failed to submit monthly bills of sales or accountings of expenses. (Pls.' Opp. ¶¶ 8, 10, 12). In part, it appears that defendants were unable to produce the actual sales receipts because plaintiff Yang Li admitted that she had taken them in June 2010 from the defendants' premises, without defendants' permission. (Tr. at 8-9, 14). Defendants did submit their filed income tax returns, along with bank statements and merchant invoices, which do not appear to contradict the statements made by defendants in their tax returns. (See Defs.' Exs. B, D, E).

Plaintiff Li further contends that based on her observations working in Lucky, she believes that defendants under-reported their total sales and that defendants in fact had more sales, including take-out and delivery sales that are not reflected in the tax returns. However, apart from the receipts which were produced at the hearing, the plaintiffs have not submitted any additional documentary evidence to support the inference that defendants did not accurately

declare Lucky's income on the tax return. See Xelo v. Mavros, No. 03 CV 3665, 2005 U.S. Dist. LEXIS 21588, *11-12 (E.D.N.Y. Sept. 28, 2005).

Having heard the testimony, the Court credits Mr. Cheng's testimony in its entirety and finds that not only did Lucky not make deliveries, but it made less than $150,000 in sales during the eight-month period that it was open. Thus, it is clear that, based on the defendants' sales figures, Lucky did not generate an annual gross income of over $500,000. Moreover, even if the Court were to credit plaintiffs' testimony that the Restaurant made $136,438.88 during a four and a half month period, extrapolating from that number over the course of the entire eight months that the restaurant was operational, at most Lucky had sales of $242,558, which still fails to satisfy the jurisdictional prerequisite for finding Lucky to be an FLSA "enterprise." Indeed, at the conclusion of the hearing, plaintiffs' counsel conceded that Lucky did not meet the sales requirement for jurisdiction under the FLSA. (Tr. at 66, 68).

Accordingly, the Court finds that there is no evidence that defendant Lucky Grand Hunan Chinese Restaurant had gross revenues in excess of $500,000, necessary to be considered an "enterprise" within the scope of the FLSA.

### B. FLSA Employee Engaged in Commerce

Even if the employer is not an "enterprise" as defined by FLSA, plaintiffs may be able to demonstrate that they were employees "engaged in commerce or in the production of goods for commerce," pursuant to 29 U.S.C. § 203(s)(1)(A)(ii), which provides an alternative basis for jurisdiction under FLSA. See Xelo v. Mavros, 2005 U.S. Dist. LEXIS 21588, at *12 (stating that

8

"where a business fails to meet the enterprise requirements of the FLSA . . . a plaintiff's FLSA claim can survive summary judgment only if the plaintiff was engaged in commerce or in the production of goods for commerce"). The FLSA provides a definition of "commerce" that includes "trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof." 29 U.S.C. § 203(b).

In determining whether the employees are "engaged in commerce," the Court looks to "the activities of the employees and not on the business of the employer." Mitchell v. Lublin, McGaughy & Assocs., 358 U.S. at 211. In order to constitute work in commerce, "a 'substantial part' of the employee's work," Boekemeier v. Fourth Universalist Soc'y in the City of N.Y., 86 F. Supp. 2d 280, 285 (S.D.N.Y. 2000) (internal citations omitted), must involve "performing work involving or related to the interstate movement of persons or things (whether tangibles or intangibles, and including information and intelligence)." 29 C.F.R. § 779.103 (1970). As this Court noted in Xelo v. Mavros, "[t]he dispositive test for FLSA coverage asks whether a plaintiff was an employee 'in the "channels of interstate commerce," as distinguished from [one] who merely affected that commerce.'" 2005 U.S. Dist. LEXIS 21588, at *13 (internal citations omitted).

Defendants contend that plaintiffs cannot establish that plaintiffs were "employees engaged in commerce or in the production of goods for commerce." Defendants argue that it is undisputed that Lucky was a small Chinese restaurant, located in Brooklyn, that "catered to local residents." (Defs.' Mem. at 7). Plaintiff Yang Li testified that she was a waitress at Lucky, serving the clients who ate in the restaurant. (Tr. at 4). Although there was disagreement as to

whether Lucky had a delivery-take-out service, plaintiff Li's testimony was clear that she played no role in that part of the business; her role was strictly limited to waiting on tables in the Restaurant. (Id. at 5-7). Plaintiff presented no evidence that she had any job responsibilities that could be considered "performing work involving or related to the interstate movement of persons or things." 29 C.F.R. § 779.103

Courts considering similar circumstances have found that where the employee is a cook, waiter, or even a purchaser or porter of supplies for a local restaurant, that does not constitute "engaged in commerce" as defined by the FLSA. See Lamont v. Frank Soup Bowl, Inc., 2001 WL 521815, at *2-3; see also Xelo v. Mavros, 2005 U.S. Dist. LEXIS 21588, at *13-14 (finding employee, who worked at a small restaurant in Queens that provided both in-house meals and a catering operation and whose tasks included dishwashing, deliveries, and making bank deposits, did not engage in commerce or in the production of goods in commerce for purposes of jurisdiction under the FLSA). In this instance, plaintiff's job responsibilities appear to be even more localized; she worked exclusively in the restaurant. Indeed, given the nature of Lucky's business, it would be difficult to find that the restaurant was engaged in commerce for purposes of the FLSA. See McCleod v. Threlkeld, 319 U.S. 491, 494 (1943) (holding a cook/server for a company that contracted to provide food to an interstate railroad-related company was not "engaged in commerce").

Although plaintiffs did not submit any testimony from the other named plaintiff, Chun Zhou Li, and there is admittedly a dispute as to whether he was even an employee at Lucky or an "investor," plaintiffs do not address the defendants' claim that they were not employees engaged

10

in commerce. They simply argue that even if there is no federal jurisdiction due to the small size of the restaurant, the court should exercise supplemental jurisdiction over their state law claims. (Pls.' Opp. ¶ 15).

Accordingly, based on the testimony presented at the hearing and a review of the parties' submissions, the Court respectfully recommends that the district court find that there is no federal jurisdiction under the FLSA and that plaintiffs' claims under the FLSA be dismissed.

### C. Supplemental Jurisdiction

"In general, where the federal claims are dismissed before trial, the state claims should be dismissed as well." Marcus v. AT&T Corp., 138 F.3d 46, 57 (2d Cir. 1998). A district court "may decline to exercise supplemental jurisdiction over a claim . . . [where it] has dismissed all claims over which it has original jurisdiction." 28 U.S.C.A. § 1367(c)(3). Courts in the Second Circuit routinely dismiss complaints where the FLSA provided the jurisdictional hook and the rest of plaintiffs' claims arise under state law. See, e.g., Xelo v. Mavros, 2005 U.S. Dist. LEXIS 21588, at *18-19 (declining to exercise supplemental jurisdiction over remaining state law claims after granting summary judgment in favor of defendants on both federal claims); Lamont v. Frank Soup Bowl, Inc., 2001 WL 521815, at *7 (stating that "[s]ince there is no federal jurisdiction over either [of plaintiff's FLSA claims] the complaint must be dismissed). Therefore, the Court respectfully recommends that the district court decline to exercise supplemental jurisdiction over plaintiff's remaining state law claims.

11

## CONCLUSION

The Court respectfully recommends that the district court grant defendants' motion for summary judgment in their favor and dismiss both plaintiffs' FLSA and remaining state law claims.

**SO ORDERED.**

Dated: Brooklyn, New York
January 9, 2012

                                              Cheryl L. Pollak
                                              United States Magistrate Judge
                                              Eastern District of New York